IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF OREGON

WILLIAM C.,[1]                                      Case No. 1:19-cv-01625-SB

                    Plaintiff,              **OPINION AND ORDER**

          v.

ANDREW M. SAUL, Commissioner of Social
Security,

                    Defendant.

_____

**BECKERMAN, U.S. Magistrate Judge.**

        William C. ("Plaintiff") brings this appeal challenging the Commissioner of the Social

Security Administration's ("Commissioner") denial of his application for Supplemental Security

Income ("SSI") under Title XVI of the Social Security Act. The Court has jurisdiction to hear

Plaintiff's appeal pursuant to 42 U.S.C. § 1383(c)(3), which incorporates the review provisions

of 42 U.S.C. § 405(g). For the reasons explained below, the Court reverses the Commissioner's

---

        [1] In the interest of privacy, this opinion uses only the first name and the initial of the last name of the non-governmental party in this case. Where applicable, this opinion uses the same designation for a non-governmental party's immediate family member.

decision because it is based on harmful legal error and not supported by substantial evidence in the record.

## STANDARD OF REVIEW

The district court may set aside a denial of benefits only if the Commissioner's findings are "'not supported by substantial evidence or based on legal error.'" *Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). Substantial evidence is defined as "'more than a mere scintilla [of evidence] but less than a preponderance; it is such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'" *Id.* (quoting *Andrews v. Shalala*, 53 F.3d 1035, 1039 (9th Cir. 1995)).

The district court "cannot affirm the Commissioner's decision 'simply by isolating a specific quantum of supporting evidence.'" *Holohan v. Massanari*, 246 F.3d 1195, 1201 (9th Cir. 2001) (quoting *Tackett v. Apfel*, 180 F.3d 1094, 1098 (9th Cir. 1999)). Instead, the district court must consider the entire record, weighing the evidence that both supports and detracts from the Commissioner's conclusions. *Id.* Where the record as a whole can support either the grant or denial of Social Security benefits, the district court "'may not substitute [its] judgment for the [Commissioner's].'" *Bray*, 554 F.3d at 1222 (quoting *Massachi v. Astrue*, 486 F.3d 1149, 1152 (9th Cir. 2007)).

## BACKGROUND

### I.    PLAINTIFF'S APPLICATION

Plaintiff was born in April 1965, making him fifty years old on July 10, 2015, the day he filed his protective application.[2] (Tr. 13, 22, 55, 68.) Plaintiff has a limited education and no past

_____

[2] "[T]he earliest an SSI claimant can obtain benefits is the month after which he filed his application[.]" *Schiller v. Colvin*, No. 12-771-AA, 2013 WL 3874044, at *1 n.1 (D. Or. July 23,

relevant work experience. (Tr. 22.) In his SSI application, Plaintiff alleges disability due to posttraumatic stress disorder ("PTSD"), an inability to "read or write," and a "back injury."[3] (Tr. 55, 68.)

The Commissioner denied Plaintiff's SSI application initially and upon reconsideration, and on March 9, 2017, Plaintiff requested a hearing before an Administrative Law Judge ("ALJ"). (Tr. 13.) Plaintiff and a vocational expert ("VE") appeared and testified at an administrative hearing held on September 5, 2018. (Tr. 31-53.) On October 24, 2018, the ALJ issued a decision denying Plaintiff's SSI application. (Tr. 13-24.) On August 16, 2019, the Appeals Council denied Plaintiff's request for review, making the ALJ's decision the final decision of the Commissioner. (Tr. 1-6.) Plaintiff now seeks judicial review of that decision. (Compl. at 1-2.)

## II.    THE SEQUENTIAL PROCESS

A claimant is considered disabled if he or she is unable to "engage in any substantial gainful activity by reason of any medically determinable physical or mental impairment which . . . has lasted or can be expected to last for a continuous period of not less than 12 months[.]" 42 U.S.C. § 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for determining whether an applicant is disabled within the meaning of the Social Security Act." *Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are: (1) whether the claimant is engaged in substantial gainful activity; (2) whether the claimant has a severe impairment; (3) whether the impairment meets or equals a listed

_____

2013) (citation omitted). Plaintiff therefore amended his onset date to July 10, 2015. (Tr. 13, 34-35.)

[3] Plaintiff "does not contest" on appeal the ALJ's physical impairment-related findings. (Pl.'s Opening Br. at 3 n.1.)

impairment; (4) whether the claimant can return to any past relevant work; and (5) whether the claimant can perform other work that exists in significant numbers in the national economy. *Id.* at 724-25.

The claimant bears the burden of proof for the first four steps. *Bustamante v. Massanari*, 262 F.3d 949, 953-54 (9th Cir. 2001). If the claimant fails to meet the burden at any of those steps, the claimant is not disabled. *Id.* at 954. The Commissioner bears the burden of proof at step five of the analysis, where the Commissioner must show the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Tackett*, 180 F.3d at 1100. If the Commissioner fails to meet this burden, the claimant is disabled. *Bustamante*, 262 F.3d at 954.

## III.    THE ALJ'S DECISION

The ALJ applied the five-step sequential evaluation process to determine if Plaintiff is disabled. (Tr. 13-24.) At step one, the ALJ determined that Plaintiff had not engaged in substantial gainful activity since July 10, 2015, the day he filed his application. (Tr. 15.) At step two, the ALJ determined that Plaintiff suffered from the following severe impairments: "[U]nspecified neurocognitive disorder; learning disorder; posttraumatic stress disorder (PTSD); depressive disorder; and lumbago with sciatica[.]" (Tr. 15.) At step three, the ALJ concluded that Plaintiff did not have an impairment that meets or equals a listed impairment. (Tr. 15.) The ALJ then concluded that Plaintiff had the residual functional capacity ("RFC") to perform "medium work," subject to these limitations: (1) Plaintiff can lift, carry, push, and pull fifty pounds occasionally and twenty-five pounds frequently; (2) Plaintiff can sit, stand, and walk for up to six hours during an eight-hour workday; (3) Plaintiff can occasionally stoop, kneel, crouch, crawl, and climb ramps and stairs, but never climb ladders, ropes, and scaffolds; (4) Plaintiff needs to

be limited to "performing simple, routine, repetitive tasks, consistent with a reasoning level of [two] or less," and making "simple work-related decisions"; (5) Plaintiff can only "have occasional contact with the public, coworkers, and supervisors"; and (6) Plaintiff's "[t]ime off tasks can be accommodated by normal breaks." (Tr. 17.) At step four, the ALJ concluded that Plaintiff had "no past relevant work." (Tr. 22.) At step five, the ALJ determined that Plaintiff was not disabled because a significant number of jobs existed in the national economy that he could perform, including work as a night cleaner, bottle line attendant, and garment sorter.[4] (Tr. 23.)

## DISCUSSION

Plaintiff argues that the ALJ erred by failing to provide legally sufficient reasons for discounting the opinions of his examining and non-examining psychologists, Katherine Green, Psy.D. ("Dr. Green"), Scott Alvord, Psy.D. ("Dr. Alvord"), Susan South, Psy.D. ("Dr. South"), and David Scott, Ph.D. ("Dr. Scott").[5] As explained below, the Court concludes that the Commissioner's decision is based on harmful legal error and not supported by substantial evidence. Accordingly, the Court reverses the Commissioner's decision and remands for further proceedings.

///

---

[4] While this case was pending, the Social Security Administration ("SSA") granted Plaintiff's most recently filed SSI application, finding him disabled as of February 2020. (Pl.'s Reply Br. at 4.) According to Plaintiff, the SSA "found [him] disabled at a later date, based on the same evidence now before the Court." (Pl.'s Reply at 4.) It is not clear, however, if Plaintiff's age (approaching fifty-five in February 2020) played a role in the SSA's decision to award benefits.

[5] Drs. South and Scott are non-examining state agency psychological consultants. Dr. South agreed with Dr. Scott's opinion in all material respects. (*Compare* Tr. 61-65 *with* Tr. 76-80.) As a result, the Court addresses only Dr. South's opinion, as it is identical to Dr. Scott's opinion.

## I.    APPLICABLE LAW

"There are three types of medical opinions in social security cases: those from treating physicians, examining physicians, and non-examining physicians." *Valentine v. Comm'r Soc. Sec. Admin.*, 574 F.3d 685, 692 (9th Cir. 2009) (citing *Lester v. Chater*, 81 F.3d 821, 830 (9th Cir. 1995)). "Where a treating or examining physician's opinion is contradicted by another doctor, the '[ALJ] must determine credibility and resolve the conflict.'" *Id.* (quoting *Thomas v. Barnhart*, 278 F.3d 947, 956-57 (9th Cir. 2002)). "An ALJ may only reject a treating physician's contradicted opinions by providing 'specific and legitimate reasons that are supported by substantial evidence.'" *Ghanim v. Colvin*, 763 F.3d 1154, 1161 (9th Cir. 2014) (quoting *Ryan v. Comm'r of Soc. Sec.*, 528 F.3d 1194, 1198 (9th Cir. 2008)).

"An ALJ can satisfy the 'substantial evidence' requirement by 'setting out a detailed and thorough summary of the facts and conflicting clinical evidence, stating his interpretation thereof, and making findings.'" *Garrison v. Colvin*, 759 F.3d 995, 1012 (9th Cir. 2014) (quoting *Reddick v. Chater*, 157 F.3d 715, 725 (9th Cir. 1998)). Merely stating conclusions is insufficient: "'The ALJ must do more than state conclusions. He must set forth his own interpretations and explain why they, rather than the doctors', are correct.'" *Id.* (quoting *Reddick*, 157 F.3d at 725). "[A]n ALJ errs when he rejects a medical opinion or assigns it little weight while doing nothing more than ignoring it, asserting without explanation that another medical opinion is more persuasive, or criticizing it with boilerplate language that fails to offer a substantive basis for his conclusion." *Id.* at 1012-13 (citing *Nguyen v. Chater*, 100 F.3d 1462, 1464 (9th Cir.1996)).

## II.    ANALYSIS

Plaintiff argues that the ALJ erred in discounting the opinions of his examining and non-examining psychologists, Drs. Greene, Alvord, and South. Drs. Greene, Alvord, and South's opinions conflict in certain respects. (*See* Tr. 79-80, Dr. South opined that Plaintiff is not

significantly limited in his ability to "get along with coworkers or peers without distracting them

or exhibiting behavior extremes," to "travel in unfamiliar places or use public transportation," or

to "sustain an ordinary routine without special supervision"; Tr. 318, Dr. Greene opined that

Plaintiff is markedly limited in his ability to "get along with coworkers or peers without

distracting them or exhibiting behavioral extremes" and to "travel in unfamiliar places or use

public transportation"; Tr. 301, Dr. Alvord opined that Plaintiff "would have difficulty

performing work activities on a consistent basis [i.e., an ordinary routine] without special or

additional instructions/accommodations"). The ALJ therefore needed to provide specific and

legitimate reasons for rejecting Drs. Greene, Alvord, and South's opinions. *See Batson v.

Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1195 (9th Cir. 2004) ("[I]n the case of a conflict the

ALJ must give specific, legitimate reasons for disregarding the opinion of the treating

physician") (citation and quotation marks omitted); *Kilian v. Barnhart*, 226 F. App'x 666, 668

(9th Cir. 2007) ("Kilian's contention that the ALJ erred when he discounted her treating

physician's opinion is flawed because the treating physician's opinion conflicted with that of a

nonexamining physician, and the ALJ supported his decision with specific and legitimate

reasons.").

### A.    Dr. Greene's Opinion

On December 22, 2016, the State of Oregon Disability Determination Services ("DDS")

referred Plaintiff to Dr. Greene for a neuropsychological evaluation.[6] (Tr. 308-19.) Dr. Greene

---

[6] Dr. Alvord evaluated Plaintiff on September 22, 2016, and "emphasized" to DDS that "neuropsychological testing [was] indicated . . . to clarify the nature of [Plaintiff's] neurocognitive complaints." (Tr. 301; *see also* Tr. 301, demonstrating that Dr. Alvord "suspect[ed]" that Plaintiff "meets the criteria for a historic [l]earning [d]isorder exacerbated more recently by a neurocognitive condition potentially associated with a history of traumatic brain injury, hypoxic episode related to an incident in which he attempted to hang himself, and/or electrocution event while working as an electrician's helper").

reviewed Dr. Alvord's evaluation, conducted a clinical interview, and administered tests.
(Tr. 308.) Dr. Greene noted that Plaintiff reported his school and work performance over the
years had been impaired by a history of special education for dyslexia, aphasia, and an "inability
to read and write," and that Plaintiff wore dirty clothes, was "poorly groomed," and "smelled."
(Tr. 308-09.)

      With respect to testing, Dr. Greene noted that Plaintiff "required test instructions repeated
or re-explained to comprehend instructions"; Plaintiff "appeared to put forth his best effort";
Plaintiff's test results were "considered a good measure of his current level of functioning";
Plaintiff's full scale intelligence quotient ("IQ") placed him in the borderline range; Plaintiff
exhibited "significant weakness" in terms of perceptual reasoning and processing speed;
Plaintiff's writing "could not be deciphered due to his poor spelling and lack of punctuation";
and Plaintiff's spelling skills were "considered approximately second grade equivalency."
(Tr. 310-11.) Dr. Greene also noted that "[d]yslexia and aphasia are characterized by difficulties
with language skills (i.e., writing, reading, spelling, decoding abilities), and current achievement
test results found reading, writing and spelling skills far below what would be expected for
[Plaintiff's] age and grade level completed"; Plaintiff met the criteria for reading and writing-
related learning disorders; and it was "not clear" how much of Plaintiff's "learning and cognitive
deficits are genetically related or acquired from [a] history of head injury suffered," but "[i]n
either case, his visual/perceptual/constructional skills would be considered *severely* impaired."
(Tr. 311-12.)

      Based on her evaluation, Dr. Greene diagnosed Plaintiff with an unspecified
neurocognitive disorder, specific learning disorders with impairment in reading (word reading

accuracy, reading rate, or fluency) and written expression (spelling accuracy, grammar, punctuation, accuracy, clarity, or organization), PTSD, and a depressive disorder. (Tr. 312.)

On January 2, 2017, a few weeks after evaluating Plaintiff, Dr. Greene completed a Rating of Impairment Severity Report and a Mental Residual Function Capacity Report. (Tr. 315-18.) In these reports, Dr. Greene opined, among other things, that Plaintiff is markedly limited (i.e., a "limitation which precludes the ability to perform the designated activity on a regular and sustained basis, [such as eight] hours a day, [five] days a week, or an equivalent work schedule") in terms of his ability to: (1) carry out detailed instructions; (2) sustain an ordinary routine without special supervision; (3) "complete a normal workday and workweek without interruptions from psychologically based symptoms and to perform at a consistent pace without an unreasonable number and length of rest periods"; (4) accept instructions and respond appropriately to supervisors; (5) get along with co-workers without distracting them or exhibiting behavioral extremes; (6) maintain socially appropriate behavior and adhere to basic standards of neatness and cleanliness; and (7) use public transportation or travel to unfamiliar places. (Tr. 317-18.)

B.    The ALJ's Decision

The ALJ assigned "some weight" to Dr. Greene's opinion. (Tr. 21.) The ALJ provided two reasons for assigning less than full weight: (1) Dr. Greene's opinion is "based on a one-time evaluation" of Plaintiff, which, according to the ALJ, meant that Dr. Greene's opinion was "based in large part on [Plaintiff's] subjective reports," which the ALJ discounted; and (2) Dr. Greene's opinion is "not entirely consistent with the record as a whole."[7] (Tr. 21.) In addition to these reasons, the ALJ added that although the record does not support the "excessive, marked

---

[7] Plaintiff does not challenge on appeal the ALJ's decision to discount his testimony.

restrictions in mental functioning" that Dr. Greene identified, the "evidence of record does support moderate limitation in the broad areas of mental functioning set forth in the regulations (see Finding 3 above)." (Tr. 21.)

The Court finds that the ALJ failed to meet the specific and legitimate reasons standard. The Commissioner argues that it was appropriate for the ALJ to discount Dr. Greene's opinion on the ground that it was inconsistent with the record evidence.[8] In support of this argument, the Commissioner notes that the portion of the ALJ's decision that addressed Dr. Greene's opinion included the reference to "see Finding 3 above." (Def.'s Br. at 7.) The Commissioner then provides "example[s]" that support the ALJ's finding, relying on activities that the ALJ discussed in the portion of his decision related to "Finding 3." (Def.'s Br. at 7.)

The Court is not persuaded by the Commissioner's argument. An ALJ must specifically identify the evidence that he believes undermines a physician's opinion. *See Peterson v. Colvin*, 668 F. App'x 278, 279 (9th Cir. 2016) (holding that the ALJ "failed to specifically identify *any* objective medical evidence or activities that undermine [the claimant's physician's] opinion"); *Bell v. Berryhill*, No. 17-5441, 2018 WL 1102167, at *2 (W.D. Wash. Feb. 28, 2018) (explaining that "meaningful review requires the ALJ to specifically identify the evidence that undermines an opinion and explain how and why the evidence does so"). If the ALJ fails to do so, it is

_____

[8] This is the only reason the Commissioner cites in support of the ALJ's decision to discount Dr. Greene's opinion. (*See* Def.'s Br. at 6-8, the Commissioner did not defend the ALJ's discounting of Dr. Greene's opinion on the ground that it relied largely on Plaintiff's self-reports). In any event, it is noteworthy that Dr. Greene conducted a clinical interview and administered several psychological tests, as well as a mental status exam, and therefore relied on more than just Plaintiff's self-reports. *See, e.g.*, *Shelley V. v. Saul*, No. 6:18-cv-01760-SB, 2020 WL 1131489, at *10 (D. Or. Mar. 9, 2020) (explaining that clinical interviews and mental status exams are "objective measures and cannot be discounted as a 'self-report'" and that "the rule allowing an ALJ to reject opinions based on self-reports does not apply in the same manner to opinions regarding mental illness" because that is "the nature of psychiatry" (quoting *Buck v. Berryhill*, 869 F.3d 1040, 1045 (9th Cir. 2017))).

improper for the Commissioner to attempt to rehabilitate the ALJ's decision on appeal by

offering a *post hoc* rationale. *See Peterson*, 668 F. App'x at 279 ("The Commissioner's attempt

to rehabilitate the ALJ's conclusion on appeal by offering several *post hoc* rationales is

unavailing. We 'review the ALJ's decision based on the reasoning and factual findings offered

by the ALJ—not *post hoc* rationalizations that attempt to intuit what the adjudicator may have

been thinking.") (citation omitted).

      Here, the ALJ did not specifically identify the evidence that undermines Dr. Greene's

opinion that Plaintiff suffers from marked limitations. Instead, the ALJ referred generally to his

statements under "Finding 3" regarding the regulations' "broad areas of mental functioning."

(Tr. 21.) This portion of the ALJ's decision includes nearly two pages of findings. (*See* Tr. 16-

17.) To determine which of those findings undermine Dr. Greene's opinion, the Court would

have to attempt to intuit what the ALJ was thinking. That is significant because this portion of

the ALJ's decision includes findings that are consistent with the medical opinion evidence but

for which the ALJ did not account in the VE hypothetical.

      For example, Dr. Greene opined that Plaintiff is markedly limited in his ability to "adhere

to standards of neatness and cleanliness." (Tr. 318.) Dr. Greene based this on Plaintiff's

presentation during Drs. Greene and Alvord's evaluations. (*See* Tr. 308, Dr. Greene noted that

Plaintiff was "poorly groomed and his clothes were dirty, and he smelled" during her evaluation

and that she reviewed Dr. Alvord's opinion; Tr. 299, Dr. Alvord stated that Plaintiff appeared

"disheveled" and "evidently has to be reminded by his girlfriend . . . occasionally to take

showers or change clothing"). Under "Finding 3," the ALJ noted that Plaintiff's girlfriend denied

that Plaintiff needed reminders to maintain his hygiene, but the ALJ also stated that the record

evidence at times "confirmed" that Plaintiff has difficulty maintaining his personal hygiene. (*See*

Tr. 17, the ALJ stated that Plaintiff has "some difficulties managing his hygiene without reminders" and that "this is, at times, confirmed in the medical evidence of record," citing Exhibits 4F and 6F, i.e., Drs. Greene and Alvord's consultative evaluations). Dr. South likewise stated that the record reflected that Plaintiff's social avoidance would "occasionally affect his ability . . . to maintain work-like neatness and cleanliness," which is why she found that Plaintiff was moderately limited in his ability to "adhere to basic standards of neatness and cleanliness." (Tr. 79.) Furthermore, after noting that Dr. South opined that Plaintiff would have difficulty "maintain[ing] work-like neatness and cleanliness," the ALJ assigned "significant weight" to Dr. South's opinion because the ALJ found it "generally consistent with the record as a whole[.]" (Tr. 22.)

Despite the apparent consensus among the ALJ and the examining and non-examining psychologists that Plaintiff is at least moderately limited in his ability to adhere to basic standards of neatness and cleanliness, the ALJ did not provide any reasons for failing to include such a limitation in the hypothetical that he posed to the VE and relied on in denying Plaintiff's application (*see* Tr. 47-51), even though such a limitation may prevent someone from engaging in substantial gainful activity.[9] *See, e.g.*, *Hanke v. Comm'r, Soc. Sec. Admin.*, No. 3:12-cv-00598-KI, 2013 WL 840192, at *7 (D. Or. Mar. 6, 2013) ("Hanke's attorney asked the VE whether a worker would be able to work even if she were 'unable to maintain acceptable standards of hygiene on a routine basis.' . . . The VE answered no. The VE also confirmed that if the worker were bathing or changing clothes once a week, that would be below acceptable levels of hygiene."). The fact that the ALJ omitted without explanation Plaintiff's moderate to marked

---

[9] In an unpublished decision from 2003, the Ninth Circuit remanded a case because the ALJ "omitted without explanation a moderate limitation in [the claimant's] ability to . . . 'adhere to basic standards of neatness and cleanliness.'" *Pilson v. Barnhart*, 75 F. App'x 681, 682 (9th Cir. 2003).

limitation in the ability to adhere to basic standards of neatness and cleanliness was a reversible error, as was the ALJ's failure to specifically identify evidence that undermined Dr. Greene's opinion. *See Bradshaw v. Colvin*, 642 F. App'x 677, 678 (9th Cir. 2016) ("Because we conclude that the ALJ failed to adequately explain why he rejected certain [record] evidence, and that the error was not harmless, we vacate and [exercise our discretion to] remand for further proceedings.").

### C.    Conclusion

For the reasons stated, the Court concludes that the ALJ failed to provide specific and legitimate reasons, supported by substantial evidence, for discounting Dr. Greene's opinion.[10]

## III.    REMEDY

"If an ALJ's hypothetical does not reflect all of the claimant's limitations, then 'the expert's testimony has no evidentiary value to support a finding that the claimant can perform jobs in the national economy.'" *Bray*, 554 F.3d at 1228 (quoting *DeLorme v. Sullivan*, 924 F.2d 841, 850 (9th Cir. 1991))). On remand, the ALJ will reevaluate the opinions of the examining and non-examining psychologists, reformulate Plaintiff's RFC, and present a complete hypothetical to the VE reflecting all of Plaintiff's credible limitations. *See Wilkins v. Astrue*, No. 1:09-cv-00874, 2010 WL 3783557, at *5-6 (E.D. Cal. Sept. 27, 2010) (remanding for further proceedings because the ALJ omitted a limitation from the VE hypothetical, which meant that the VE's testimony could not "qualify as substantial evidence").

///

///

---

[10] The Court does not address whether the ALJ erred in discounting Drs. Alvord and South's opinions because, as explained below, this case will be remanded for further proceedings.

## CONCLUSION

For the reasons stated, the Court REVERSES the Commissioner's decision and

REMANDS this case for further proceedings consistent with this opinion.

**IT IS SO ORDERED.**

DATED this 18th day of November, 2020.

_____
HON. STACIE F. BECKERMAN
United States Magistrate Judge